County Board of Arlington County, et al.

v.

Commonwealth of Virginia
Department of Taxation, et al.

Record No. 891135

June 8, 1990

Present: All the Justices

*Cynthea L. Perry, Deputy County Attorney; Charles G. Flinn, County Attorney (Ashton P. Trice, Assistant County Attorney; Bryan T. Camp, Assistant County Attorney; Philip G. Sunderland, City Attorney; Thomas W. McCandlish; Timothy M. Kaine; Mezzulo & McCandlish*, on briefs), for appellants.

*Barbara M. Rose, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy Attorney General; James G. Council, Assistant Attorney Genral*, on brief), for appellee Commonwealth of Virginia Department of Taxation.

*Everett B. Gibson (Charles A. Hartz, Jr.; Anne M. Stolee; Francis A. Cherry, Jr.; Laughlin, Halle, Gibson & McBride; Randolph, Boyd, Cherry & Vaughan*, on brief), for appellee Richmond, Fredericksburg and Potomac Railroad Company.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we decide whether the State Tax Commissioner's assessment of railroad real estate based upon an appraisal technique known as the "unit method" is consistent with the provisions of Article X, § 2 of the Constitution of Virginia. As pertinent, that section provides: "[a]ll assessments of real estate and tangible personal property shall be at their fair market value, to be ascertained as prescribed by law." *Id.*

In general terms, the unit method, as applied in this case, involves an appraisal of all railroad property as a single operating unit or a "going concern." The railroad's weighted average net income over a period of years is capitalized by dividing this aver-

age net income by a weighted average cost of debt or equity over the same period of years. Estimated values of the following railroad properties are then deducted from this capitalized value: (1) noncarrier or nonoperating property (property not used in the transportation function); (2) rolling stock; (3) roadbed and track; (4) operating improvements; and (5) various materials and supplies. The remainder is designated as "other apportioned value." This remainder is considered to represent the assessed value of all the railroad's operating real estate and remaining tangible personal property. This value is then divided among the local taxing jurisdictions in proportion to the railroad's main line, side and yard track mileages in each jurisdiction. The local taxing jurisdictions levy their railroad real estate taxes upon these apportioned values.

The Richmond, Fredericksburg and Potomac Railroad Company (RF&P) owns approximately 420 acres of land (Potomac Yard) in Arlington County and the City of Alexandria, most of which are used as a railroad marshalling yard.[1] Situated in a densely developed area of Arlington and Alexandria, near National Airport, Potomac Yard lies in a corridor bounded by U.S. Route 1 on the west and George Washington Memorial Parkway on the east.

Until 1984, the State Corporation Commission (SCC) was responsible for appraising and then assessing railroad operating real estate pursuant to former Code §§ 58-503.1 and -522. The SCC appraised and assessed each of RF&P's operating real properties in each taxing jurisdiction, and then totaled these results in each jurisdiction. Consequently, there was no apportionment among the taxing jurisdictions. Each taxing jurisdiction levied its tax by applying its tax rates to the SCC's assessed total values for that jurisdiction.

We have reviewed and generally approved SCC tax assessments of Potomac Yard in three previous cases. *Railroad Company* v. *Commonwealth*, 203 Va. 294, 124 S.E.2d 206 (1962) (*RF&P I*); *RF & P* v. *Corporation Commission*, 219 Va. 301, 247 S.E.2d 408 (1978) (*RF&P II*); *RF&P R.R. Co.* v. *State Corp. Comm.*, 230 Va. 260, 336 S.E.2d 896 (1985) (*RF&P III*). In 1983, the

---

[1] RF&P also owns noncarrier or nonoperating land adjacent to Potomac Yard which is appraised and assessed by the localities. It is not involved in this appeal.

SCC appraised Potomac Yard at $80,820,700 by a market value review of nearby comparable properties.

Effective in 1984, the General Assembly transferred the railroad assessing function from the SCC to the Department of Taxation, acting through the commissioner. *See* Code §§ 58.1-2600 and -2655 (specifically transferred by Acts 1983, c. 570). Using the unit method, the commissioner appraised and thereafter assessed essentially the same property[2] in 1984 at $6,882,152, in 1985 at $15,599,324, in 1986 at $16,276,146, and in 1987 at $18,320,447.[3]

On December 31, 1986, pursuant to the provisions of Code § 58.1-2670, the County Board of Arlington filed an "Application For Correction Of Erroneous Assessment" with respect to the commissioner's 1984 assessment of Arlington's portion of Potomac Yard, naming the Commonwealth of Virginia, the department, and RF&P as defendants. Arlington was later permitted to amend its application in order to challenge the 1985 through 1987 assessments as well. On September 1, 1987, the City of Alexandria filed a similar application, based on the commissioner's assessments of Alexandria's portion of Potomac Yard for 1984 through 1986, and later was allowed to add the assessment for 1987. These cases were later consolidated. On June 14, 1989, after hearing evidence, the trial court denied the applications and sustained the commissioner's assessments. Arlington and Alexandria appeal.

■ Code § 58.1-202(1) empowers the commissioner to administer the tax laws "with a view to ascertaining the best methods of reaching [taxable property and] effecting equitable assessments." Furthermore, Code § 58.1-2655 directs the department annually to assess railroad real property "upon the best and most reliable information that can be procured." Accordingly, the department argues that the commissioner has the discretion to utilize the unit method as one of several possible appraisal methodologies.[4] On

---

[2] Potomac Yard's assessed acreage varied slightly each year. Also, without a separate valuation, the commissioner included the value of railroad personalty, machinery, furniture, and utility lines in its annual "other apportioned value" amounts.

[3] In general, the assessed values increased each year because of RF&P's increased income.

[4] The department and RF&P also note that a number of other states authorize or require the use of the unit method of appraisal. However, they cite no jurisdictions with constitutional and statutory provisions similar to those in Virginia. Neither Virginia's constitution nor its statutes contain any reference to the unit method in assessing real estate of public service corporations.

the other hand, the localities maintain that there is no constitutional or statutory authority for the use of such a method in appraising RF&P's real estate.

■ We observed in *RF&P I* that "[w]hatever the rule may be in other jurisdictions, the plain provision of Section 169 [now Article X, § 2] of the Constitution which requires all real estate to be assessed at its fair market value is the only legal rule which can be used for the assessment of real estate in Virginia." 203 Va. at 299, 124 S.E.2d at 209-10 (citation omitted). Generally, in assessing real estate for local taxation, the commissioner should seek to determine its fair market value by a consideration of its highest and best use in its *particular* location. *See generally RF&P I, RF&P II, RF&P III.*

■ The commissioner testified, however, that his appraisals do not reflect the fair market value of Potomac Yard in its particular location, but do reflect its fair market value as a part of the railroad unit. This, however, is merely the "use value" of Potomac Yard. Use value is defined as

> *the value a specific property has for a specific use.* Use value focuses on the contributory value of the real estate to the enterprise of which it is a part, without regard to its highest and best use or the monetary amount that might be realized upon its sale.

American Institute of Real Estate Appraisers, The Appraisal of Real Estate 20 (9th ed. 1987) (emphasis in original) (the manual).

The manual describes the three generally accepted "approaches" to ascertaining market value of real estate as those of "sales comparison," "income capitalization," and "cost." *Id.* at 70-71. Similarly, we have referred to these as the "market data (comparable sales), capitalization of income, and reproduction cost less depreciation" methods of real estate appraisal. *Arlington County Board v. Ginsberg*, 228 Va. 633, 639, 325 S.E.2d 348, 351 (1985).

The unit method simply defines the parameters of what is being valued under the capitalization of income method. The issue here is whether this method can be used when it does not produce the fair market value of the specific property being appraised.

The department contends that the unit method is similar to that used in appraising and assessing rental real estate for local taxation. *See generally Clarke Associates v. County of Arlington*, 235 Va. 624, 369 S.E.2d 414 (1988). However, we think the comparison is inapt for two reasons.

First, when rental property income is capitalized, only the rental income of the *assessed property* is capitalized. Here, the income capitalized is the operating income of a *larger property* or entity of which Potomac Yard is only a part.

Second, rental property income is typically the primary basis for a rental property's value.[5] Here, RF&P's capitalized net income arises from the operation of the entire railroad. This capitalized net income, and the consequent valuation put upon RF&P's real estate, is influenced by many elements unrelated to the land and its improvements. RF&P's primary function is transporting persons and property, not simply renting its land and improvements. The efficiency with which its rolling stock and other equipment unassociated with the land is used, as well as the management skills of its supervisors and the quality of services rendered by its employees, all have substantial impact upon RF&P's net income.

Moreover, we have noted the incompatibility of "the unit approach and the Virginia system of taxation of railroad properties." *N. and W. Ry. Co.* v. *Commonwealth*, 211 Va. 692, 699, 179 S.E.2d 623, 629 (1971).[6] Because the value of railroad properties appraised by the unit method could be affected by the railroad's net income, it is possible that a negative value might be attributed to its real property should the railroad sustain an operating deficit. *See N. and W. Ry. Co.*, 211 Va. at 699-700, 179 S.E.2d at 629. Indeed, one court has noted that use of the unit method is "simply not real property taxation either in substance or in form." *ITT World Communications* v. *San Francisco*, 693

---

[5] In contrast, under the commissioner's method of appraisal, the average of the "other apportioned values" during the years 1984-1987 was only about 60 percent of the average of RF&P's total capitalized values during the same period.

[6] The department and RF&P seek to distinguish *N. and W. Ry. Co.* on the ground that the railroad franchise tax, in effect when the case was decided, has since been abolished, thereby changing the scheme of railroad taxation. In our opinion, however, the abolition of the railroad franchise tax provision in the Virginia Constitution (proposed by Acts 1970, c. 763, and ratified by the people on November 3, 1970) did not remove the inconsistency of assessing particular railroad real property based in part on the net income of the *entire* railroad.

P.2d 811, 816, 37 Cal. 3d. 859, 865, 210 Cal. Rptr. 226, 231 (1985).

■ Because the commissioner's method of appraisal did not determine the fair market value of Potomac Yard in its particular location, as required by the Constitution of Virginia, we conclude that his assessments were invalid and that they cannot be sustained. Therefore, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*