**CSX TRANSPORTATION, INC.; and Carolina, Clinchfield & Ohio Railway, Plaintiffs,**

v.

**William H. FORST, Tax Commissioner, Virginia Department of Taxation, His Successors in Office, Defendant.**

**Civ. A. No. 3:91CV00488.**

United States District Court, E.D. Virginia, Richmond Division.

Nov. 6, 1991.

436

James W. McBride, Anne M. Stolee, Laughlin, Halle, McBride, Lunsford & Fletcher, Washington, D.C., for plaintiffs.

Courtney George, CSX Transp., Inc., Jacksonville, Fla., for CSX Transp.

James Linwood Sanderlin, McGuire, Woods, Battle & Boothe, Richmond, Va., for CSX Transp., Inc. and Carolina, Clinchfield & Ohio Ry.

James G. Council, Christopher D. Eib, John Patrick Griffin, Office of Atty. Gen., Richmond, Va., for Virginia Dept. of Taxation, William Forst, Tax Com'r.

Thomas W. McCandlish, Timothy . M. Kaine, Mark B. Rhoads, Mezzullo & McCandlish, Richmond, Va., for City of Richmond, Va., County of Hanover, Va., City of Newport News, Va., County of Henrico, Va., County of Chesterfield, Va., City of Alexandria, Va.

Steven L. Micas, County Atty., Steven L. Myers, Asst. County Atty., Chesterfield, Va., for County of Chesterfield.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary injunction and on defendant's motion to dismiss. Both motions have been fully briefed and argued and are ripe for disposition. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1337, and on 49 U.S.C. § 11503.

*Motion for Preliminary Injunction*

Plaintiffs seek a preliminary injunction restraining and enjoining the defendant, and all those acting in concert and participation with him, from assessing plaintiffs' rail transportation property for the 1988 tax year at a higher ratio of assessed value to true market value than the ratio of assessed value to true market value of other industrial property in Virginia, or from levying or collecting taxes based upon such assessments. Plaintiffs argue that a preliminary injunction should be issued by this Court for two reasons. First, plaintiffs offer a verified complaint with supporting affidavits that arguably show that defendant has violated, or is about to violate, Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 54 (Feb. 5, 1976), recodified at 49 U.S.C. § 11503 (hereinafter "Section 306" and "4R–Act"). Second, plaintiffs assert that the issuance of a preliminary injunction will best effectuate the purposes of Congress in enacting Section 306.

■ The first question this Court must address concerns the prerequisites for the issuance of preliminary injunctive relief in Section 306 cases. In most instances, the issuance of injunctive relief is governed by the "balance-of-hardship" test. *Guerra v. Scruggs*, 942 F.2d 270, 273 (4th Cir.1991).

*See Jones v. Board of Governors of University of North Carolina*, 704 F.2d 713 (4th Cir.1983); *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977). Under this test, to demonstrate an entitlement to preliminary relief, a plaintiff must show that it likely will be subject to irreparable harm in the absence of an injunction, and that such harm will outweigh the probable harm to the defendant resulting from the grant of interim relief. However, while the balance-of-hardship test for injunctive relief is well settled law in this and other circuits, the Fourth Circuit Court of Appeals has never addressed the question of whether preliminary relief in a Section 306 case can be granted absent a review of traditional equitable criteria. Several federal courts have found, however, that the issuance of injunctive relief in Section 306 cases need not be governed by the traditional equitable criteria normally applicable in actions between private litigants. In *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir.1981), the Tenth Circuit held that it was unnecessary for the railroad seeking an injunction in a Section 306 case to prove irreparable harm in order to obtain injunctive relief. The *Lennen* Court reasoned that when the evidence shows that a "defendant is engaged in, or is about to engage in, the act or practices prohibited by a statute that provides for injunctive relief to prevent such violations, irreparable harm need not be shown." *Id.* at 259. Section 306 does confer upon federal district courts the power to "grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgements as may be necessary to prevent, restrain or terminate any acts in violation of [Section 306]."[1] According to the court in *Lennen*, therefore, where a trial court finds *reasonable cause* to believe that a violation of Section 306 has been, or is about to be, committed, an injunction should be granted to prevent that violation. *Id.* at 260.

---

1. The corresponding portion of 49 U.S.C. § 11503(c) provides that district courts have jurisdiction "to prevent a violation of" Section 306. The Historical and Revision notes to that section state that "[t]he words 'such mandatory or

prohibitive' and 'interim equitable relief' are omitted as unnecessary ... The word 'prevent' is substituted for 'prevent, restrain, or terminate' to eliminate redundancy...."

When faced with cases involving violations of Section 306, a number of federal courts have found it appropriate to follow the standard for injunctive relief set forth in *Lennen*. This Court is somewhat reluctant to follow *Lennen* in its entirety, however, given the Supreme Court's decision in *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In *Romero–Barcelo*, which incidentally was decided post-*Lennen*, the Supreme Court stated that the statutory grant of jurisdiction to a court to protect against statutory violations does not mean that a federal judge is obligated to grant an injunction for every violation of law. *Id.* at 313, 102 S.Ct. at 1803–04. The *Romero–Barcelo* Court went on to outline the narrow circumstances in which the traditional equitable criteria for granting an injunction should be abandoned:

> [C]onsiderations applicable to cases in which injunctions are sought reflect a "practice with a background of several hundred years of history," *Hecht Co. v. Bowles*, 321 U.S. 321 [64 S.Ct. 587, 88 L.Ed. 754] (1944), a practice of which Congress is assuredly well aware. Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles.... "Unless a statute in so many words or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."

*Weinberger v. Romero–Barcelo*, 456 U.S. at 313, 102 S.Ct. at 1803–04 (*quoting Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946)).

Nothing in the language of Section 306 suggests that courts should abandon traditional equitable criteria when making a determination of the appropriateness of injunctive relief. The statute does not direct courts to grant an injunction when a court finds that "reasonable cause to believe" that a violation of the statute has been, or is about to be, committed. *Lennen*, 640 F.2d at 260. The statute merely authorizes courts to grant injunctive relief "as may be necessary" to prevent violations of Section 306.

Despite the absence of a clear statutory directive, the *Lennen* Court and others have determined that courts should follow a "reasonable cause" standard when granting injunctive relief under section 306. *See Burlington Northern R.R. Co. v. Department of Revenue*, 934 F.2d 1064, 1074–75 (9th Cir.1991) (citing *Lennen* and finding that grant of preliminary injunctive relief against taxation of railroad which is allegedly in violation of the Railroad Revitalization and Regulatory Reform Act is not governed by traditional equitable criteria). The *Lennen* court apparently found the reasonable cause standard appropriate under the 4–R Act given that under other statutory schemes courts have granted equitable relief upon a showing that there was a reasonable cause to believe that a violation of the Act at issue might occur. For example, the Labor Management Relations Act (LMRA) gives courts the power to grant injunctive relief when faced with an unfair labor charge. *See* National Labor Relations Act, § 10($l$) as amended 29 U.S.C. § 160($l$). Courts have interpreted the LMRA to mean that an injunction may be granted where there is reasonable cause to believe that an unfair labor charge has been committed. *See e.g., Humphrey v. International Longshoremen's Ass'n AFL–CIO*, 548 F.2d 494 (4th Cir.1977); *National Labor Relations Board v. Acker Industries*, 460 F.2d 649 (10th Cir.1972); *Sachs v. Local 48, Journeyman and Apprentices*, 454 F.2d 879 (4th Cir.1972); *Retail, Wholesale and Department Store Union v. Rains*, 266 F.2d 503 (5th Cir. 1959).

In analogizing the standard for issuing injunctions under the LMRA to the proper standard under Section 306, however, the *Lennen* Court failed to point out the difference in the language of the two statutes. "Reasonable cause" language is specifically included in provisions dealing with the grant of preliminary injunctive relief under the LMRA, while Section 306 contains no express reference to an alternative stan-

dard for the grant of injunctive relief. *Compare* 29 U.S.C. § 160(*l*), *with* 49 U.S.C. § 11503(c). Additionally, the "reasonable cause" standard of the LMRA is applicable only when the National Labor Relations Board or an attorney acting on its behalf presents to the court that there is "reasonable cause" that the unfair labor charge is true and thus that an injunction should issue. The *Lennen* court did not analyze the difference between a government-initiated suit under the LMRA and the litigation between private parties that is contemplated under Section 306.

This Court rejects *Lennen* and its progeny insofar as the Tenth Circuit's opinion in *Lennen* suggests that a reasonable cause standard can be imputed into Section 306 because that standard may be appropriate in other statutory injunction contexts. In absence of a clear statutory mandate as to the standard to be applied in granting injunctive relief under Section 306, this Court must apply a standard that effectuates the legislative intent behind the 4R–Act.

Congress enacted Section 306 as part of a comprehensive plan to revitalize the nation's railroads and to strengthen the United States' railroad transportation system. Aimed at preventing the discriminatory taxation of railroads by states, the 4R–Act prohibited state practices of applying a higher ratio of assessed rail transportation property to true market value than for other business property in the same jurisdiction. Declaring state tax discrimination to be "an unreasonable and unjust discrimination against, and an undue burden upon, interstate commerce," Section 306 confers jurisdiction upon federal district courts to grant such declaratory or injunctive relief *as may be necessary* to prevent, restrain, or terminate any violation of Section 306.

The question before this Court is thus what equitable relief is necessary in this instance to facilitate the Congressional goal of protecting railroads from discrimination via Section 306 violations. The Supreme Court of the United States has found that under some statutory schemes the grant of jurisdiction to federal courts to impose injunctive relief circumscribes the usual discretion possessed by a court of equity. For instance in *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), the Supreme Court held that the Endangered Species Act, 87 Stat. 884, 16 U.S.C. § 1531, *et seq.*, required the district court to enjoin completion of the Tellico Dam in order to preserve the snail darter. Section 7 of the Endangered Species Act required federal agencies "to ensure that actions authorized, funded, or carried out by them do not jeopardize the continued existence of [any] endangered species ... or result in the destruction or modification of habitat of such species which is determined ... to be critical." Finding that Section 7 contained a flat ban on the destruction of critical habitats, the Supreme Court held that refusal to enjoin the action would have ignored the "explicit provisions of the Endangered Species Act." 437 U.S. at 173, 98 S.Ct. at 2291.

Similarly to the statute at issue in *TVA v. Hill*, Section 306 appears to contain a flat ban on discrimination against railroads in violation of the 4R–Act. In *TVA v. Hill*, however, it was not contested that the Endangered Species Act was in fact being violated by the Tellico Dam project; rather the issue in that case was whether the Tellico project should be exempt from the provisions of the Act because the project was nearly completed at the time of the passage of the Endangered Species Act. In the instant case, of course, a violation of Section 306 is not conceded. Thus while section 306 does appear to contain a flat ban on discrimination against railroads in violation of the 4R–Act, we are left with no guidance of how to apply the statutory proscription in the injunction context absent a full blown trial on the merits.

In *TVA v. Hill* the Supreme Court observed that the act at issue limited the remedies available to the district court; only an injunction could vindicate the objectives of the Act. In *Romero–Barcelo*, however, the Court noted that an injunction was not the only means of insuring compliance with the statute. The statutory scheme at issue in that case apparently provided for a range of remedial measures, including a system of fines and penalties.

While Section 306 does not provide a system of fines and penalties to ensure compliance with the 4R–Act, the statute does grant federal courts the power to grant "such mandatory or prohibitive injunctive relief, interim equitable relief and declaratory judgements as may be necessary to prevent, restrain, or terminate any acts in violation of" Section 306.

Under Section 306, the purpose of injunctive relief is to protect railroads from the negative impact of discriminatory state taxation. Requiring the railroads to make a showing of irreparable harm prior to a grant of injunctive relief would not further the objectives of Congress as enunciated in the 4R–Act. As in the *Lennen* case discussed above, if the Railroads here are required to pay the full amount of their taxes as assessed by the Commonwealth of Virginia and the various localities, the status quo will not be preserved and there is a danger that the railroad will be subject to the very discrimination that Section 306 was intended to combat. It is not for this Court to determine whether discriminatory state taxation is likely to cause irreparable harm to the railroads; Congress has already examined the issue and found that railroads should not have to bear the burden of discriminatory taxation.

For the reasons stated above, the Court finds that the railroads need not make a showing of irreparable harm in order to obtain injunctive relief. In this finding, we support the determination made by the Tenth Circuit in *Lennen* that irreparable harm need not be shown in an action for injunctive relief brought by a railroad pursuant to section 306. *See Lennen,* 640 F.2d at 259. However, this Court specifically declines to abandon the traditional "balance-the-hardship" standard for injunctive relief mandated by the Fourth Circuit. Under that balancing approach, there are four factors that enter into the determination of whether equitable relief should be granted: (1) whether the plaintiff will likely be subject to irreparable harm or injury absent a grant of injunctive relief; (2) the injury to the defendant if the injunction is issued; (3) the plaintiff's likelihood of success in a suit on the merits of the underlying dispute; and (4) the public interest. *See Guerra,* 942 F.2d at 273; *North Carolina State Ports Authority v. Dart Containerline Co.,* 592 F.2d 749, 750 (4th Cir. 1979). The principles of equity and fairness woven into this balance-of-hardship test are applicable in any setting in which a party seeks injunctive relief. In applying the traditional four-part test to an action brought under section 306, however, the first prong of the test is easily addressed: Congress has already determined that railroads should not have to bear the burden of discriminatory state taxation, *regardless* of whether such taxation would result in irreparable harm. Therefore where a railroad seeks interim relief from discriminatory taxation under section 306, there is an irrebuttable presumption that the potential for irreparable injury exists.

■ However, as in any instance in which interim relief is sought, the Court's inquiry does not end upon a finding that the first prong of the balancing test is satisfied. Under the test as articulated by this Circuit, there are three other factors which must be considered in addition to the potential of irreparable injury to the plaintiff. In the case at bar, two of the remaining factors weigh heavily against the grant of an injunction: the injury to the defendant if an injunction is issued, and the possible impact of an injunction on the public interest. Here the defendant is the taxing arm of the Commonwealth of Virginia. It is through the process of taxing individuals and businesses that the Commonwealth and its localities are able to provide for the health and welfare of its citizenry. Although it may be that temporarily depriving the Commonwealth and/or its localities of tax dollars allegedly owed by the plaintiff railroads would not adversely impact the functioning of the state and local governments, this Court must be mindful of the possible results if injunctions in taxation cases were granted routinely. The multiple harms which result from restraining the collection of taxes have long been recognized. *See generally, Fair Assessment in Real Estate Assoc. v. McNary,* 454 U.S. 100, 111, 102 S.Ct. 177, 183, 70

L.Ed.2d 271 (1981). In addition, considerations of comity and federalism mandate that a federal court sitting in equity should enjoin the collection of state taxes only in exceptional cases.

Balancing the potential of irreparable harm to the plaintiff railroads against the impact of an injunction on the defendant and the public, we find that the balance of equities favors neither party. A consideration of the fourth factor of the equitable test—the likelihood that the railroads will prevail here on the merits—does not aid this Court in its determination of whether an injunction should issue. Based on a full review of the record, the Court finds that while it is not unlikely that plaintiffs will prevail on the merits, neither is such an outcome likely. Faced with a case in which the balance of equities favors neither party clearly, and in light of Congress' prohibition of discriminatory state taxation of railroads as expressed in section 306, the Court is compelled to tip the balance of the scale in favor of the plaintiff railroads.

It is thus the determination of this Court that injunctive relief is appropriate in this case, albeit not to the full extent requested by the plaintiff. The close balance of equities in this case militates in favor of narrowly tailoring the injunctive relief granted to address the injuries from discriminatory taxation that could potentially impact the plaintiff. Plaintiff railroads have alleged essentially three injuries that could result if they were now required to pay state property taxes that could be found to be in violation of section 306. First, plaintiff railroads would necessarily experience a reduction in cash flow if the 1988 tax reassessment bills were paid. Second, the railroads have raised the concern that this Court may not have the power to order a tax refund in the event that plaintiffs do indeed prevail on the merits at trial. Finally, plaintiffs may be subject to late-payment penalty liability if they decline to pay the 1988 reassessment taxes until a determination of the validity of those taxes is made at trial. A true equitable remedy in this matter would protect the railroads from these potential harms, while allowing the Commonwealth to collect the taxes that enable it to provide for the public welfare.

For all the reasons discussed above, the Court finds that the following injunctive relief is appropriate in this case. Until further order from this Court, the defendant, and all of those acting in concert or participation with him, are hereby enjoined from collecting any amounts from the railroads in satisfaction of reassessment taxes allegedly owing for the 1988 tax year. However, should the defendant prevail on the merits of this action at trial, the Court will allow defendant to collect from the plaintiff railroads not only the 1988 reassessment amounts found to be properly owing, but also any interest and penalties that would have resulted from nonpayment of these amounts in the normal course of events. If any portion of the 1988 reassessment amounts are found at trial to be the result of an improper assessment by the DOT, plaintiff railroads will be liable only for the amount of reassessment tax found to be properly owing, if any, plus interest and penalties on that amount.

*Motion to Dismiss*

Defendant and the "local intervenors" (the intervening localities of Alexandria, Chesterfield, Henrico, Hanover, Richmond, and Newport News) (hereafter defendants) provide this Court with three different arguments to support their motion to dismiss. First, defendants contend that the railroads in this action seek to raise issues that were fully litigated and rejected in *Chesapeake Western Ry. v. Forst*, 938 F.2d 528 (4th Cir.1991). Second, defendants argue that abstention is appropriate in this case because the issues involved are the subject of ongoing litigation currently pending in the Circuit Court for the City of Richmond. Finally, defendants maintain that the failure of the railroads to join as parties to this action the numerous Virginia localities which contain railroad property constitutes a failure to join an indispensable party under Rule 19(a) and is grounds for dismissal. The Court will address each of these three arguments in turn.

### 1. Collateral Estoppel

■ This action is the latest battle in a long war between the Commonwealth of Virginia and the railroads about the proper method of transportation property taxation. Plaintiffs purport to dispute Virginia's valuation of railroad property for tax purposes. Defendants maintain that plaintiffs are actually challenging Virginia's method of taxing railroad property, and that the issues raised by the plaintiff railroads in this action have already been litigated and thus should be barred by collateral estoppel.

The doctrine of collateral estoppel operates to preclude relitigation of those issues actually considered and necessarily decided in previous litigation. *Virginia Hosp. Assn. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir.1987). Collateral estoppel binds not only actual parties to the previous litigation, but also those in privity with such parties. *Id.* Therefore any issues which were previously litigated and decided against the railroads, or their privies, regarding the 4R–Act cannot now be raised by the plaintiffs for relitigation by this Court. To determine whether invocation of the doctrine is appropriate in the instant context, we must first survey briefly some of the previous litigation that has taken place between the Commonwealth of Virginia and the various railroads.

Much of the litigation has involved challenges to the Commonwealth's method of valuing railroad property for taxation purposes, particularly in light of the 4R–Act's prohibition on the discriminatory taxation of railroad property. The language and legislative history of the 4R–Act does not require states to use a particular method of taxation, but rather directs states to treat different entities within state boundaries similarly for purposes of taxation. In 1983, the General Assembly transferred the responsibility for assessing railroad property in Virginia from the State Corporation Commission to the Department of Taxation (DOT). The DOT then determined that beginning in the 1984 tax year, railroad property in Virginia would be assessed according to the "unit method."

The unit method calculates the value of railroad property within a state based on the business value of the railroads operations within that state. In *County Board of Arlington, et al. v. Dept. of Taxation*, 240 Va. 108, 393 S.E.2d 194 (1990), the Virginia Supreme Court held that the unit method of taxation violated the state constitution and code because it provided a business or use valuation that did not measure the fair market value of the taxed property as required by Virginia law.

After the Virginia Supreme Court's decision in *County Board of Arlington*, the DOT reverted back to the "inventory and summation" method of assessing railroad property values that had been used to calculate railroad taxes in Virginia prior to the adoption of the unit method of taxation in 1984. The railroads went back to court, this time in the District Court for the Eastern District of Virginia, charging that valuating railroad property under the inventory and summation method resulted in such property being assessed at a value above market value. The railroads argued that because other property in the state was assessed at fair market value, Virginia's taxation scheme discriminated against the railroads in violation of section 306 of the 4R–Act. The district court granted summary judgement to defendants, and the Fourth Circuit affirmed in *Chesapeake Western Ry. v. Forst*, 938 F.2d 528 (4th Cir.1991).

In *Chesapeake Western*, the Fourth Circuit held that section 306 of the 4R–Act does not provide a basis for a party to challenge the accounting method by which a state values railroad property. The *Chesapeake Western* Court went on to state that while parties could not challenge a state's method of taxation, "a party may challenge a state's *calculations* of true market value, under the state's operative valuation methods, to ensure that taxes are not levied discriminatorily." *Id.* at 530. The Supreme Court has also held that section 306 of the 4R–Act provides standing for railroads to contest a state's calculation of the true market value of railroad property under the assessment methodology chosen by that state. *Burlington Northern*

*R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461–63, 107 S.Ct. 1855, 1860–61, 95 L.Ed.2d 404 (1987).

The real question presented, of course, is how one makes a distinction between "method" and "application." It is clear that the Commonwealth of Virginia is free to choose its preferred methodology for ascertaining the true market value for railroad property. It is equally clear, however, that the Commonwealth cannot shield itself from any and all challenges to its taxation of railroad property by a blanket statement that such challenges constitute attacks on Virginia's taxation methodology. On the other hand, this Court will not acquiesce in the railroads circumventing the Fourth Circuit's holding in *Chesapeake Western* by attacking the DOT's methodology under the guise of challenging only the calculations made under that methodology.

Even after a thorough review of all of the voluminous briefs and memoranda filed in this case, the Court remains unsatisfied with its understanding of the definitional parameters of the inventory and summation method of taxation. Considering the admitted complexity of the issues involved, the Court deems it prudent at this time to reserve judgement on the issue of whether the issues raised by plaintiffs in this action should be barred on the grounds of collateral estoppel. If at any time the Court concludes that plaintiffs do in fact attack the inventory and summation method itself, the Court will at that time take such action as is appropriate. In the interim defendant's motion to dismiss on collateral estoppel grounds will, subject to reconsideration, be denied.

### 2. Abstention

■ Defendants argue that absent a complete dismissal of this suit on collateral estoppel grounds or for failure to join the necessary parties, this Court should abstain from proceeding in this matter in deference to currently pending state tax suits. It is correct that under certain circumstances federal deference to pending state court proceedings may be appropri-

ate. *See Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The Supreme Court has ruled, however, that abstention on such grounds is appropriate only in "exceptional circumstances." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Although the case law since *Colorado River* does not provide this Court with a clear standard as to what constitutes sufficiently "exceptional circumstances" as to justify deference to concurrent state litigation, it is the judgement of this Court that the case at bar does not present such circumstances. We deal here with a comprehensive federal statute aimed directly at eliminating the financial burdens imposed by railroads as a result of discriminatory state taxation. To effectuate the goals behind the statutory scheme, Congress specifically conferred upon federal district courts jurisdiction to hear suits for injunctive relief in order to prevent violations of the anti-discrimination provisions of the statute. Although this Court arguably has the power to clear its docket by abstaining in this matter, *see Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), it is the "virtually unflagging" responsibility of this Court to hear and decide matters over which Congress has granted it jurisdiction. *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244.

For the reasons stated above, and mindful of the considerations of comity and wise judicial administration that are relevant to this determination, the Court finds that it has a duty to exercise the jurisdiction granted to it by Congress to adjudicate Section 306 claims. The Court therefore declines to abstain in this matter.

### 3. Failure to Join Necessary Parties

■ Defendants argue that this case should be dismissed if all of the localities in which the railroads have property are not joined as defendants. In Virginia, the DOT is responsible for the assessment of railroad operating property, while various localities in Virginia are responsible for the collection of property taxes based on the

DOT's assessments. The revenues derived from the taxation of railroad operating property within a particular locality are retained by that locality. Because the localities are the very entities who stand to suffer a direct effect on their revenues if the Railroads prevail at trial, defendants contend that this Court should dismiss the instant action and require that the Railroads join as defendants all localities in Virginia which contain railroad operating property belonging to the railroads, with a direction that any complaint be specific as to any over-assessment in each locality.[2]

Under Rule 19(a) of the Federal Rules of Civil Procedure, joinder of an absent party is appropriate in either of two instances: (1) when nonjoinder would prevent the Court from providing complete relief among those who are parties to the action; or (2) when the absent party claims an interest relating to the subject of the action and is so situated that the disposition of the action in the party's absence may impede or impair that party's ability to protect that interest. Fed.R.Civ.P. 19(a). If either of the two tests under Rule 19(a) is met, the absent party shall be joined. The absence of a party from an action can result in dismissal of that action, however, only if such party is not subject to service of process, or if the party's joinder would destroy the court's jurisdiction. Fed.R.Civ.P. 19(b).

The localities are not indispensable parties to this action such that their absence requires dismissal under Rule 19(b). If the Court determined that the localities should be joined pursuant to Rule 19(a), the localities are subject to service of process and their joinder would not deprive this Court of jurisdiction. Moreover, it is the finding of this Court that the localities should not be joined as parties to this action. Actions against government officials often raise questions concerning the need to join other government officials. The central inquiry in such cases is whether effective relief can be awarded on the basis of those officials actually before the Court. *See* Wright & Miller, Federal Practice and Procedure: Civil § 1617 at 261 (1986). Because the localities will be bound by any judgement against the defendant in this matter, the Court has the ability to render effective relief to the parties before the Court without joinder of the localities. While it is true that the localities are responsible for, and benefit from, the collection of property tax revenues from the railroads, the amount of revenue due is based upon the assessment of the railroad's property as determined by the DOT. Because the localities have no control over the DOT's assessment of railroad operating property, even absent this litigation the localities have no ability to protect their interest in receiving revenues from the taxation of

**2.** The localities affected by the Railroad's Complaint include the following cities and counties:

| Cities: | Counties: | |
|---|---|---|
| Buena Vista | Albemarle | James City |
| Charlottesville | Allegheny | Lee |
| Chesapeake | Amherst | Louisa |
| Clifton Forge | Augusta | Nelson |
| Colonial Heights | Bath | New Kent |
| Covington | Bedford | Orange |
| Emporia | Botetourt | Prince George |
| Franklin | Buchanan | Rockbridge |
| Hampton | Buckingham | Russell |
| Hopewell | Campbell | Scott |
| Lynchburg | Charles City | Southampton |
| Newport News | Chesterfield | Sussex |
| Norton | Dickenson | Wise |
| Petersburg | Dinwiddie | York |
| Portsmouth | Fluvanna | |
| Richmond | Goochland | |
| Staunton | Greensville | |
| Suffolk | Hanover | |
| Waynesboro | Henrico | |
| Williamsburg | Isle of Wight | |

railroad property within their geographical boundaries. As a practical matter, therefore, it would be impossible for the disposition of this action to impair or impede the ability of the localities to protect their admitted interest in receiving revenues from the taxation of railroad property. The Court thus finds that section 306 creates a right of action against a state's central assessing agency, and that the localities are not necessary and indispensable parties to the action. *See Clinchfield R.R. Co. v. Lynch,* No. 81–229–CIV–5 (E.D.N.C. Jun. 22, 1981) (unpublished order).

In sum, this Court concludes that plaintiff is entitled to injunctive relief as described above and that defendant's motion to dismiss is denied, subject to reconsideration as may be deemed appropriate on the grounds of collateral estoppel.