**CSX TRANSPORTATION, INC., et al., Plaintiffs**

**v.**

**William H. FORST, et al., Defendants.**

**Civ. A. Nos. 91–CV–488, 91–CV–584, 91–CV–650 and 92–CV–722.**

United States District Court, E.D. Virginia, Richmond Division.

Dec. 10, 1992.

James Linwood Sanderlin, McGuire, Woods, Battle & Boothe, Richmond, VA, James W. McBride, Anne M. Stolee, Laughlin, Halle, McBride, Lunsford & Fletcher, Washington, DC, Courtney George Hyers, CSX Transp., Inc., Jacksonville, FL, and Hugh M. Fain, III, Sanderlin, James Linwood McGuire, Woods, Battle & Boothe, Richmond, VA, for plaintiffs.

James G. Council, John Patrick Griffin, Christopher D. Eib, Office of the Atty. Gen., and Thomas W. McCandlish, Timothy M. Kaine, and Mark B. Rhoads, Mezzullo & McCandlish, Richmond, VA, for defendants.

Steven L. Micas, County Atty. and Steven L. Myers, Asst. County Atty., Chesterfield, VA, for Chesterfield County, Va.

MEMORANDUM

MERHIGE, Senior District Judge.

In the case at bar, plaintiff CSX Corporation, Inc. and its predecessor the Carolina, Clinchfield and Ohio Railway, challenge the tax assessments of their operating railroad property in Virginia for tax years 1988, 1989, 1991 and 1992.[1] Defendant William H. Forst is the Commissioner of the Virginia Department of Taxation, the agency having issued the challenged tax assessments. Because the tax revenue from those assessments is paid to the localities where plaintiffs have property, six local jurisdictions, the Cities of Richmond, Newport News and Alexandria, and the Counties of Henrico, Hanover and Chesterfield, have been allowed to intervene on behalf of defendant.[2]

Plaintiffs argue that the taxes assessed against them by defendant were excessive and discriminatory in violation of Section 306 of the Federal Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 54 (Feb. 5, 1976), recodified at 49 U.S.C. § 11503 (hereinafter "section 306"). This Court has entered an Order enjoining defendant from collecting funds from plaintiffs in satisfaction of taxes allegedly owed pending disposition of the matter. The matter has been fully briefed and argued and is ripe for disposition. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1337, and on 49 U.S.C. § 11503.

*Background*

The Constitution of Virginia requires that all real property be assessed at its fair market value for local tax purposes. Va. Constitution, Art. X, § 2 (1992). *See also Richmond, F. & P.R. Co. v. Commonwealth,* 203 Va. 294, 124 S.E.2d 206 (1962). Under Virginia law the Commissioner of Taxation is empowered to administer the tax laws "with a view to ascertaining the best methods of reaching [taxable property and of] effecting equitable assessments...." Va.Code § 58.1–202(1) (1991). Moreover, Virginia law directs the department on an annual basis to assess railroad real property "upon the best and most reliable information that can be procured...." Va.Code § 58.1–2655 (1991).

Notwithstanding this manifest grant of discretion to local authorities, the Supreme Court of Virginia has imposed some controls over assessments in light of the fair market value requirement contained in the Constitution. *See County Board of Arlington v. Commonwealth,* 240 Va. 108, 393 S.E.2d 194 (1990). In *County Board,* the Supreme Court held unconstitutional the "unit method" of tax assessment, which values railroad systems by capitalizing their net income and then allocates that value among the localities in which the railroad operates. *Id.*[3] On the other hand, the Court has deemed constitutional the taxation method known as "inventory and summation," the method employed by the Commonwealth to reach the assessments challenged here. *See Richmond, F. & P.R. Co. v. State Corp. Comm.,* 230 Va. 260,

1. By Order entered January 8, 1992, the Court consolidated the actions pertaining to tax years 1988, 1989 and 1991. A bench trial was conducted on these consolidated actions in April, 1992. Post-trial memoranda were thereafter submitted at the direction of the Court and the matter was taken under advisement. On November 6, 1992, plaintiffs filed in this Court a complaint for injunctive and declaratory relief as to 1992 taxes. This latter action raises identical substantive claims as its predecessor suits, the only difference being that an additional plaintiff is added, the Richmond, Fredericksburg, and Potomac Railway Company. On December 1, 1992, defendants moved to consolidate this latter action with the three actions already consolidated. Because this new action presents a substantially similar legal challenge to that of the consolidated actions, and in the interest of judicial economy, this motion to consolidate will be GRANTED.

2. Collectively, defendant and local intervenors shall be referred to as "defendant."

3. The Fourth Circuit has described this approach as follows:

> Under the unit method, the entire railroad is valued as a single property unit, based on the business value of railroad operations. The value of the railroad's property within a given

336 S.E.2d 896 (1985). Federal law also places certain restrictions on the capacity of localities to tax railroad properties. Section 306 of the Railroad Reform Act is of particular significance and provides in pertinent part as follows:

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

> (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

> \* \* \* \* \* \*

> (3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

49 U.S.C. § 11503(b) (1992). Section 306 also provides that:

> Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction.

49 U.S.C. § 11503(c) (1992).

The instant case is the latest in an extended series of cases in the courts of the Commonwealth and the United States with regard to the ad valorem tax assessments of railroad property. For the years 1984–1989, defendant assessed taxes on the basis of the unit method of valuation, deemed unconstitutional in *County Board*. In the wake of the Virginia Supreme Court's *County Board* decision, the Commonwealth reverted to the "inventory and summation" method of assessing railroad property, a method used by Virginia authorities prior to the adoption of the unit method of taxation in 1984. Under this method, separate values are derived for individual parcels of real property and various categories of individual property. These properties are then summed to obtain the taxable value of the railroad's operating property.

In response, the railroads filed suit in the United States District Court for the Eastern District of Virginia, arguing that valuing railroad property under the inventory and summation method resulted in such property being assessed at a value above market value. The railroads argued that because other property in the Commonwealth was assessed at fair market value, Virginia's taxation scheme discriminated against the railroads in violation of section 306. The district court granted summary judgment in favor of defendants, and the Fourth Circuit affirmed. *Chesapeake Western Ry. v. Forst*, 938 F.2d 528 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1577, 118 L.Ed.2d 220 (1992).

In *Chesapeake*, the Court held that section 306 does not provide a party with a basis to challenge the accounting *method* chosen by a state to assess the true market value of railroad property. According to the Court, "a party may challenge a state's *calculations* of true market value, under the state's operative valuation methods, to ensure that taxes are not levied discriminatorily." *Id.* at 530. However, "[t]he job of determining whether a particular valuation method produces a 'true' market value involves, at its core, a policy choice." *Id.* at 531. While acknowledging that section 306 explicitly authorizes examination of state taxation schemes, the Fourth Circuit's holding nonetheless was premised on the gener-

---

state is then determined based on the proportion of the railroad's total operation which exists within that state. Similarly, the value of the railroad property within any given locality is proportionately based on the extent of that railroad's presence in the locality.

*Chesapeake Western Ry. v. Forst*, 938 F.2d 528, 529 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1577, 118 L.Ed.2d 220 (1992).

al proscription of federal interference in state taxation matters, 28 U.S.C. § 1341, and the lack of facility of the federal courts in undertaking the "difficult, and arguably impossible, task of determining which specific assessment methodology produces true market value of railroad property." Id. at 533.[4]

## Discussion

The gravamen of plaintiffs' complaint is that defendant, Commissioner of the Virginia Department of Taxation, levied taxes on plaintiffs' railroad properties at a discriminatory rate in violation of section 306.[5] Defendant's assessments report the value of six categories of railroad property: (1) roadway and track; (2) operating improvements; (3) telephone, power and water lines; (4) machinery, furniture and other equipment; (5) materials and supplies; and (6) operating land. In this litigation, plaintiffs have challenged only the roadway and track (track structure) and operating land assessments.

The evidence mounted at trial may be fairly summarized as follows. The values defendant reached to assess track structure were achieved pursuant to Va.Code § 58.1—2656, which provides that such assessments are to be calculated by arriving at an average value per mile of the railroad's track properties in the Commonwealth of Virginia. Once this average is determined, the assessment is calculated by multiplying the average by the number of miles of track in the Commonwealth. In 1983, the State Corporation Commission (SCC)[6] calculated track market values and these values were used to calculate the assessments for the tax years at issue here. The 1983 valuations were conducted by A. Lee O'Bryan of the SCC. Mr. O'Bryan attempted to calculate an original cost for the track structure properties by examining past accounts in order to arrive at an estimate of the original cost of assets still in use. He then discounted his track valuations using a multiplier of .80, a depreciation rate previously used by the SCC. See Norfolk & W.R. v. Commonwealth, 211 Va. 692, 695, 179 S.E.2d 623, 627–28 (1971). After calculating the overall value, the SCC assigned certain per mile values to single track, double track, and yard track, and then apportioned the overall value to localities based on the amount of mileage in each jurisdiction, multiplying the local reported value by the local assessment ratio so as to equalize the assessment.

Plaintiffs mounted lengthy testimony at trial intended to cast doubt on the propriety of O'Bryan's "historical cost less depreciation" approach (hereafter referred to as "historic cost") in assessing track structure.[7] To this end, plaintiffs' expert witnesses testified that the historic cost approach was inappropriate and was improp-

4. This proscription against challenges to *methodologies* came in the wake of *Burlington N. R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461–63, 107 S.Ct. 1855, 1859–61, 95 L.Ed.2d 404 (1987), wherein the Supreme Court concluded that a party may challenge a state's *calculations* of true market value determined pursuant to its operative valuation methods. However, the Court expressly left unresolved whether section 306 allows a railroad to challenge "the appropriateness of the accounting *methods* by which the state determined the railroad's value," *id.* at 463 n. 5, 107 S.Ct. at 1861 n. 5 (emphasis added), a matter later addressed by the Fourth Circuit in *Chesapeake.*

5. The taxes levied by defendant as to the years 1988 and 1989 are actually the result of a reassessment, carried out after the Virginia Supreme Court deemed unconstitutional the "unit method" of taxation used by defendant during those years. *See County Board of Arlington v.*

*Commonwealth*, 240 Va. 108, 393 S.E.2d 194 (1990). Following the Court's holding in 1990, defendant issued revised assessments of all railroad property during those years. The 1988 revised assessment challenged in this case was issued in August, 1991. The 1989 revised assessment was issued in October, 1991 and was followed shortly thereafter by the 1991 original assessment. On September 1, 1992, defendant certified its assessments of plaintiffs' properties for the 1992 tax year.

6. In 1983, the General Assembly transferred the responsibility for assessing railroad property in Virginia from the SCC to the Department of Taxation.

7. The Fourth Circuit has described the approach as one in which value is "based on the original investment in the property, minus a fixed percentage of that investment—varying depending

erly applied. In lieu of the historic cost approach, plaintiffs' expert witnesses contended that an approach using net liquidation value was preferable. Under such an approach, the defendant must assess plaintiffs' properties as if all operations would cease and its ownings were liquidated. In post-trial memoranda submitted to the Court, plaintiffs advance in support *Lake Monticello Service Co. v. Board of Supervisors,* 237 Va. 434, 377 S.E.2d 446 (1989), which plaintiffs argue vindicates their position. In *Lake Monticello,* the Supreme Court of Virginia held that where improvements to real property had limited value because they were economically committed to a particular use, it was error to rely on historic cost less depreciation to arrive at fair market value; the assessment of the improvements must be reduced to the market value of the removable equipment.

Plaintiffs also presented evidence intended to show that defendant levied discriminatory tax assessments on its land holdings in the Commonwealth. Plaintiffs attempted to support this claim on the basis of evidence pertaining to 34 out of its roughly 1100 land parcels within the Commonwealth of Virginia. Plaintiffs presented the expert testimony of Joseph B. Call, an appraiser in the Richmond, Virginia area, in an attempt to show how plaintiffs' parcels would have been valued if defendant had applied its own "across-the-fence" methodology correctly.

## Conclusions

■ The Court is not persuaded by the testimony presented by plaintiffs as to overassessment with respect to either track structure or operating land. As for the track structure, the Court concludes that plaintiffs failed to show any overassessment. At trial, plaintiffs relied in particular on the integrity of the net liquidation value approach as determined by appraiser Arnold Tesh. The Court found this testimony unpersuasive; even Mr. Tesh acknowledged that the values he reached did not represent the fair market values of the properties if they continued to be used for railway purposes. Indeed, no evidence was presented that plaintiffs were on the verge of scrapping their track during any of the tax years in question. Moreover, the propriety of the valuation method advocated by plaintiffs has previously been disapproved by the highest Court of Virginia. See *Norfolk & W. R. Co. v. Commonwealth,* 211 Va. 692, 698–99, 179 S.E.2d 623, 628 (1971).

Also, the Court is not persuaded by plaintiffs' challenge to the historic cost method employed by defendant. Significantly, while plaintiffs criticized the approach on its merits altogether, it is notable that plaintiffs did not argue that the assessments were higher than if the historic cost approach were conducted by its terms. Indeed, this is not surprising because the actual depreciated costs of the track assets, as contained in plaintiffs' own public filings, are considerably in excess of the assessments at issue here. Moreover, plaintiffs' own experts J.B. Call, Arnold Tesh and Thomas Tegarden all acknowledged that cost is a recognized property valuation approach; Jordan and Call, in particular, noted that such an approach is especially suited to valuation of special purpose properties such as railroads. This view is supported by the case law of the Virginia Supreme Court, which has explicitly approved the use of depreciated historic cost to assess railroad property. *Norfolk & W. R. Co. v. Commonwealth,* 211 Va. 692, 179 S.E.2d 623 (1971). Finally, the .80 depreciation multiplier is well-accepted, as evidenced by the precedent of the Commonwealth. *Id.* In short, plaintiffs' failure to adduce credible evidence of value eliminates its ability to prove discrimination in these assessments.[8]

on the particular property involved—as allowance for depreciation." *Chesapeake,* 938 F.2d at 529.

8. Also, the Court is not persuaded that *Lake Monticello Service Co. v. Board of Supervisors,* 237 Va. 434, 377 S.E.2d 446 (1989), dictates a contrary result. In that case, the result turned on the ability of the taxpayer to present compe-

As for the operating land assessments, the Court is similarly unpersuaded. In attempting to prove its case, plaintiffs failed to offer any evidence of the fair market value of their operating land to counter the assessments made by defendant. Without such evidence, plaintiffs were unable to establish that the land assessments were in fact violative of section 306. Indeed, Mr. Call himself had no opinion of the fair market value of the modest and self-selected number of parcels he examined. Moreover, testimony by defense witness Thomas Harty of the Richmond Assessor's Office shows that the plaintiffs' land assessments are well below those of surrounding properties. When assessments of plaintiffs' property are compared with city assessments of adjoining properties, plaintiffs' assessments average between 3–53% of the local assessments. These figures reveal that defendant made significant downward adjustments in its assessments of railroad land to account for particular features of railroad property. Based on this comparison with local property, the Court concludes that plaintiffs failed to demonstrate any overassessment.

▆▆▆ In order to prevail in its claim under section 306, plaintiffs had to prove that the ratio of the assessed value of their property to its fair market value exceeds the ratio of the assessed value of other commercial and industrial property to its fair market value by more than five percent. 49 U.S.C. § 11503(b). Under federal law, the burden of proof in this determination is governed by State law, in this instance that of Virginia. 49 U.S.C. § 11503(c). Under Virginia law, there is a presumption in favor of the correctness of a tax assessment and the burden is on the property owner to show that the assessment is excessive. *Norfolk & W. R. Co. v. Commonwealth*, 211 Va. 692, 179 S.E.2d 623 (1971). Because plaintiffs have failed to show that defendant's assessments are

discriminatory or excessive, and because they failed to produce cognizable evidence of the fair market value of their property in Virginia, the Court rejects plaintiffs' challenge under section 306.

Moreover, in the end, plaintiffs' challenge is most properly construed as an attack on the Commonwealth's chosen methodology of ad valorem tax assessment, rather than a colorable claim that the inventory and summation method avowedly used was "misapplied." In this sense, the Court is in accord with the exhaustive and well-reasoned opinion of the United States District Court of Utah, which concluded on the basis of the evidence before it that "it is clear that there is more than one way to value a railroad. . . . All the methods may be equally rational given their underlying assumptions. And they are all irrational if pressed to extremes." *Union P. R. Co. v. State Tax Com'n*, 716 F.Supp. 543, 555 (D.Utah 1988). Here, the extensive and often arcane evidence mounted by plaintiffs can only be described as going to how the Commonwealth elected to assess plaintiffs' properties. Plaintiffs, as in *Chesapeake*, purport to seek a "truly" accurate valuation method to achieve the true market value prerequisite to analysis of whether the requirements of section 306 are satisfied. They do so by essentially advocating a return to the "unit method" of taxation, a methodology disallowed by the Virginia Supreme Court in *County Board*. For this reason, under the Fourth Circuit's recent decision in *Chesapeake*, plaintiffs cannot be heard to complain.[9]

For the foregoing reasons, the Court will dissolve the prior preliminary injunction entered in this matter and plaintiffs will be directed to remit to defendant all taxes owed from the 1988, 1989, 1991 and 1992 tax years, as well as any interest and penalties that would have resulted from nonpayment of said amounts.

tent evidence of the value of its property based on comparable sales. Here, plaintiffs failed to introduce any such credible evidence.

**9.** An identical result was recently reached by Judge Hilton where in a strikingly similar case

he granted defendant a motion to dismiss on *Chesapeake* grounds. *See Richmond, F. & P. R. Co. v. Forst,* 797 F.Supp. 494 (Memorandum opinion, E.D.Va., 1992).

An appropriate Order to this effect shall issue.