## RICHMOND, FREDERICKSBURG, AND POTOMAC RAILROAD COMPANY, Plaintiff,

### v.

### William H. FORST, et al., Defendants.

### Civ. A. No. 92–524–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 29, 1992.

John Patrick Griffin, Asst. Atty. Gen., Richmond, Va., for defendants Forst and Jordan.

Timothy M. Kaine, Mezzulo & McCandlish, Richmond, Va., for defendants City of Alexandria, Fairfax County and Prince William County.

Charles G. Flinn, County Atty., Arlington, Va., for defendant Arlington County.

Michael McGettigan, Craig C. Reilly, Murphy, McGettigan & West, P.C., Alexandria, Va., Francis A. Cherry, Jr., Randolph, Boyd, Cherry and Vaughn, Richmond, Va., Everett B. Gibson, Everett B. Gibson Law Firm, Memphis, Tenn., for plaintiff.

than rejecting *Bradley,* the panel applied it in a footnote, reaching the same result. 934 F.2d at 528 n. 7.

MEMORANDUM OPINION .

HILTON, District Judge.

This matter came before the court on May 29, 1992 on the plaintiff's motion for a preliminary injunction and the defendants' motion to dismiss. The plaintiff has moved, pursuant to Section 306 of the Railroad Revitalization and Regulatory Reform Act (4–R Act), 49 U.S.C. § 11503, for a preliminary injunction enjoining the defendants from collecting any disputed ad valorem taxes allegedly owing for the 1988 through 1991 tax years. The defendant has moved to dismiss on the grounds of res judicata, collateral estoppel, and abstention.

Section 306 of the 4–R Act (49 U.S.C. § 11503) grants United States district courts the jurisdiction to prevent or restrain tax discrimination against railroads. 49 U.S.C. § 11503(b) provides:

> The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
>
> (2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.
>
> (3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
>
> (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.

In addition, subsection (c) provides:

> Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law ...

■ Plaintiffs seeking relief under this act, however, must challenge the application of the state tax method and not the method of taxation itself. *Chesapeake Western Railway v. Forst*, 938 F.2d 528 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1577, 118 L.Ed.2d 220 (1992). In *Chesapeake*, the railroad was challenging the method of tax assessment as discriminatory under section 306 of the 4–R Act. The court concluded that section 306 does not provide a basis to challenge a state's preferred accounting method, and further explained that federal courts are ill-equipped to evaluate the merits of a challenge to a state taxation scheme. "The statute simply does not authorize the judiciary to enter into the difficult task of second-guessing a state's policy assessment of how best to value property." *Id.* at 533. The court also reasoned that without Congressional authorization "the courts ... cannot make [taxing decisions] without completely displacing the fact-finding and policymaking powers of state government." *Id.*

Section 306 was passed as an express exception to the general policy of federal noninterference with state taxation contained in the Tax Anti–Injunction Act, 28 U.S.C. § 1341. Because section 306 is an express Congressional proscription against tax discrimination for railroads, plaintiffs need not make a showing that a plain, speedy, and efficient remedy is not available in a state court before a district court can act. Despite this exception to the rule

of federal noninterference, Congress did not intend that the railroads could challenge the manner in which state assessment officials arrive at the fair market value of their property in federal court on a yearly basis. *Burlington Northern R.R. v. Lennen,* 715 F.2d 494, 498 (10th Cir. 1983), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). "Such a rule would impose significant burdens on district courts and would substantially thwart the tax collection process of states and their subdivisions." *Id.*

The plaintiff in this case claims that the improper assessments against the railroad are the result of a wrongful application of the "Across the Fence" (ATF) method. The plaintiff attempts to adhere to the rule announced in *Chesapeake* by alleging that this case is a challenge to the application of the ATF assessment method and not an attack on the method itself.

The complaint asserts two forms of relief, neither of which afford it relief under the 4–R Act. The first theory of recovery is essentially an attempt by the railroad to challenge the method of taxation so that a more favorable assessment method would be used. This tactic has already been ruled impermissible by the decision in *Chesapeake.*

Though the plaintiff's complaint and affidavits state that the application of the method of taxation is being attacked, the real thrust of the complaint and affidavits is to discredit the ATF method and return to the unit method of taxation. The plaintiff claims that the appraiser from the Virginia Department of Taxation failed to consider factors such as non-railroad use and the lag time in developing or reconfiguring the railroad land. These arguments essentially advocate a return to using the principles of the unit method. Under the rule announced in the *Chesapeake* decision, those arguments are inappropriate when seeking relief pursuant to the 4–R Act.

■ The second theory of recovery plaintiff asserts is also couched in terms of challenging the application of the ATF tax method, but its foundation is really a disagreement between tax appraisers. The Congress did not intend for the 4–R Act to be used to settle differences of opinion between appraisers, but to prohibit tax discrimination against railroads. The plaintiffs here fail to allege any discriminatory practice in the application of the ATF method. The basis of the complaint is a difference of opinion between appraisers, not a discriminatory application of a tax assessment method. Section 306 is not intended to place a federal district court in the same position as a state tax assessment board for the purpose of valuing properties. In order to state a proper challenge to a tax assessment method under section 306, a plaintiff must allege specific conduct by the defendant indicating a discriminatory intent to discriminate against the railroad. Without such a rule, federal district courts would sit annually as tax appraisal boards to evaluate the value of railroad property in a particular jurisdiction.

The distinction between allegations of specific tax discrimination and allegations of differences of opinion between tax appraisers is crucial to a cause of action under section 306. In the former, a federal district court hears evidence to make findings of fact with regard to any possible tax discrimination, whereas in the latter the complaint fails to state a claim. Because of the lack of any evidence or assertions of discrimination in applying the assessment method in this case, the complaint does not state a claim under the 4–R Act and should be dismissed.

■ Had the plaintiff stated a claim under section 306, this court believes that it should abstain since the same issues have been litigated over the last three years and are currently being litigated in state court, in the Circuit Court for the City of Richmond. Under the doctrine in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), abstention is appropriate when a state proceeding is pending, the issues presented are uniquely of state concern, and the state court has jurisdiction to resolve any federal issues. *See also Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). The doctrine of abstention reflects a strong policy against federal

intervention in state judicial processes in the absence of great, immediate and irreparable injury to the plaintiff. *Moore,* 442 U.S. at 423, 99 S.Ct. at 2377. The federal system places great significance upon respecting state governments and allowing them to perform local functions without federal interference. *Younger,* 401 U.S. at 44, 91 S.Ct. at 750. In applying the *Younger* doctrine to civil cases, the Court set up a test: (1) is there an ongoing state judicial proceeding; (2) do the proceedings implicate important state interests; (3) is there an adequate opportunity in the state proceedings to raise federal claims. *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n.,* 457 U.S. 423, 433, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982).

All three prongs of the test are clearly met in this case. When the Virginia Department of Taxation began using the unit method of assessments, the City of Alexandria and the County of Arlington filed suit against the Commonwealth of Virginia and RF & P challenging the use of the unit method. The plaintiffs argued that the unit method violated the Virginia Constitution by failing to determine the fair market value of railroad property within the localities. The Virginia Supreme Court agreed, holding that the unit method constituted a business tax rather than a real property tax and declared it unconstitutional. *County Board of Arlington v. Commonwealth,* 240 Va. 108, 393 S.E.2d 194 (1990). The Department of Taxation then went back to the inventory and summation method of assessing railroad property. Alexandria, Arlington, and other localities then filed suit against the Department and various railroads in Richmond Circuit Court to collect any resulting additional taxes for 1987, 1988 and 1989. More than forty localities have filed suits against the Department, RF & P, and nine other railroads in state court. All of these suits are currently pending before the Circuit Court for the City of Richmond.

The claims currently pending in the Circuit Court for the City of Richmond involve the same issues presented in this case. The suit here and the suit in Richmond focus on the valuation of railroad property for local tax purposes. These property valuation issues present questions which are most appropriately handled in one proceeding in the state court. States are best-equipped to administer appraisals and taxation, and state courts routinely resolve conflicts of such a local nature. *See generally Burlington,* 715 F.2d at 498; *Chesapeake,* 938 F.2d at 533. A federal court should not displace or second-guess the state in these local matters. *Id.* This court believes that the issues involved in this dispute are uniquely of state concern, as this case involves a disagreement between land appraisers, not a challenge to a discriminatory tax assessment.

The 4-R Act calls for enforcement of the Act in both state and federal court. Congress never intended for federal jurisdiction to be exclusive. All issues raised in this suit have been and are being litigated in the Circuit Court for the City of Richmond and that is the proper forum for their resolution.

The plaintiff's motion for a preliminary injunction should be denied and the defendants' motion to dismiss should be granted.