4 F.3d 244
 RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY,
Plaintiff-Appellant,
v.
William H. FORST; David E. Jordan; City of Alexandria;
Arlington County, Virginia; Fairfax County,
Virginia; Prince William County,
Virginia, Defendants-Appellees.
 No. 92-1874.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1993.
Decided July 15, 1993.
Corrected Opinion Filed July 29, 1993.
 
 Betty Jo Christian, Steptoe & Johnson, Washington, DC, argued (Timothy M. Walsh, Roderick L. Thomas, Steptoe & Johnson, Washington, DC, Everett B. Gibson, Everett B. Gibson Law Firm, Memphis, TN, on the brief), for plaintiff-appellant.
 Timothy Michael Kaine, Mezzullo & McCandlish, Richmond, VA, argued (Thomas W. McCandlish, Helen M. Konrad, Mezzullo & McCandlish, John Patrick Griffin, Asst. Atty. Gen., James Godwin Council, Office of The Attorney General of Virginia, Richmond, VA, Charles G. Flinn, Co. Atty., Cynthea L. Perry, Sp. Counsel, Arlington, VA, Philip G. Sunderland, City Atty., Alexandria, VA, Sharon E. Pandak, Co. Atty., Bernadette S. Peele, Asst. Co. Atty., Prince William, VA, A. Robert Cherin, Deputy Co. Atty., Fairfax, VA, on the brief), for defendants-appellees.
 Before WIDENER, MURNAGHAN, and WILLIAMS, Circuit Judges.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 In this appeal, we revisit several issues left open by our opinion in Chesapeake Western Railway v. Forst, 938 F.2d 528 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1577, 118 L.Ed.2d 220 (1992). Here, the Richmond, Fredericksburg & Potomac Railroad Company (RF & P) contends that the Defendants'[1] valuation of its rail transportation property violates Sec. 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4-R Act"), 49 U.S.C. Sec. 11503 (1988).[2] The district court dismissed RF & P's complaint for failure to state a claim, and, alternatively, because abstention was appropriate under the Younger doctrine.[3] Richmond, F. & P.R.R. v. Forst, 797 F.Supp. 494, 495-96 (E.D.Va.1992) (RF & P IV ). The district court also denied without discussion RF & P's motion for a preliminary injunction. Id. at 497.
 
 
 2
 RF & P appeals each decision of the district court. We hold that RF & P properly stated a claim for which relief can be granted, that abstention is inappropriate in this case, and that the district court should address the merits of RF & P's motion for a preliminary injunction. We therefore reverse the dismissal of the complaint, vacate the denial of the preliminary injunction, and remand for further proceedings.
 
 I.
 
 3
 RF & P has had a long history of disputes with the Virginia taxing authorities. Chesapeake Western, 938 F.2d at 529; County Bd. of Arlington County v. Commonwealth Dep't of Taxation, 240 Va. 108, 393 S.E.2d 194 (1990); Richmond, F. & P.R.R. v. Department of Taxation, 762 F.2d 375 (4th Cir.1985); Richmond, F. & P.R.R. v. State Corp. Comm'n, 230 Va. 260, 336 S.E.2d 896 (1985) (RF & P III ); Richmond, Fredericksburg & Potomac R.R. v. State Corp. Comm'n, 219 Va. 301, 247 S.E.2d 408 (1978) (RF & P II ); Richmond, F. & P.R.R. v. Commonwealth, 203 Va. 294, 124 S.E.2d 206 (1962) (RF & P I ). In each of these cases, the Railroad has contested in one way or another the Commonwealth's valuation of its property for tax assessment purposes. The courts have consistently rejected RF & P's challenges to its tax liability. In this case, RF & P seeks to litigate in the narrow confines left open by these prior decisions.
 
 
 4
 Some familiarity with the history of Virginia's taxation of railroad property is necessary to understand the narrow challenge which RF & P now brings. At the turn of the century, the Virginia Constitutional Convention of 1901-02 considered and rejected the "unit method" of valuation of railroad property. See Norfolk & W.R.R. v. Commonwealth, 211 Va. 692, 179 S.E.2d 623, 628-29 (1971). Instead, Virginia adopted the "across-the-fence" (ATF) method, which it used consistently until 1984.[4] In 1984 the Department of Taxation abandoned the ATF method in favor of the unit method, and assessed RF & P's railroad property using the new method for each of the tax years 1984 through 1989.[5] On June 8, 1990, the Supreme Court of Virginia invalidated the unit method because it failed to determine the fair market value of the property as required by the Virginia constitution. County Board, 393 S.E.2d at 197. Subsequently, the Department reverted to the ATF method of valuation.
 
 
 5
 Following the decision in County Board, numerous cities and counties in Virginia filed suit against the Department of Taxation to obtain reassessments under the newly reinstituted ATF method of the railroad property in their respective jurisdictions for the 1984 through 1989 tax years. See, e.g., City of Alexandria v. Commonwealth, No. 760CL91T03221-00 (Va.Cir.Ct. filed August 27, 1991); County Bd. of Arlington v. Department of Taxation, No. 760CL91T00011-00 (Va.Cir.Ct. filed Jan. 1, 1991); Prince William County v. Department of Taxation, Law No. LS3097-1 (Va.Cir.Ct. filed Aug. 31, 1990). Before revising its assessments in previous tax years, however, the Department first issued its 1990 assessments under the ATF method. The 1990 assessments were certified in late September of that year. (Complaint p 15.)
 
 
 6
 Before the 1990 assessments became final, RF & P and five other railroad companies brought suit in federal court to challenge Virginia's ATF method of taxing railroad property under Sec. 306 of the 4-R Act. Chesapeake W. Ry. v. Forst, No. 3:90CV00484, 1990 WL 506863 (E.D.Va. Oct. 3, 1990). On appeal, we held that Sec. 306 does not permit a railroad to challenge a state's method of determining the true market value of railroad property. Chesapeake W. Ry. v. Forst, 938 F.2d 528, 533 (4th Cir.1991). We expressly reserved to the railroads the right to challenge a state's "calculation" of fair market value. Id. Following Chesapeake Western, the Department of Taxation certified revised assessments for the 1988 and 1989 tax years on August 23, 1991. (Complaint p 12.) The Department certified its assessments for the 1991 tax year on September 1, 1991. (Id. p 15.) The revisions produced substantial increases in the assessed values of RF & P's property. For example, under the unit method, the Department had assessed RF & P's property in Alexandria at a value of $15,293,168 for the 1988 tax year. Under the ATF method, the Department revised that assessment to a value of $111,663,882, or 730 percent of the original assessment. (Id. p 12.) In tax years 1989 and 1990, that assessment increased to $134,799,906 and $158,052,238, respectively. (Id. p 12, 15.) RF & P filed timely administrative appeals with the Tax Commissioner for each of the tax years at issue in this case, but in a decision rendered March 31, 1992, the Commissioner denied all relief. (Id. p 18-19.)
 
 
 7
 Two weeks later, RF & P filed its complaint in the district court, seeking injunctive and declaratory relief. Shortly thereafter, the Defendants moved to dismiss the complaint under Rule 12(b)(6), asserting various theories justifying dismissal. Collectively, Defendants argued that RF & P was again seeking to force them to adopt the unit method of valuation, that RF & P's challenge to its 1990 assessments was barred by res judicata, that RF & P's claims were barred by collateral estoppel, that abstention was appropriate under both Younger and Burford,[6] and that the court should decline jurisdiction under the "wise judicial administration" doctrine enunciated in Colorado River.[7] Although the district court limited its holding to a dismissal under Rule 12(b)(6) and under Younger, Defendants renew each of these arguments before this court. We will address in turn the dismissal for failure to state a claim, the Defendants' affirmative defenses, the abstention doctrines, and finally RF & P's request for preliminary relief.
 
 II. Failure to State a Claim
 
 8
 Pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed RF & P's complaint for failure to state a claim under Sec. 306 of the 4-R Act. RF & P IV, 797 F.Supp. at 496. In reviewing a dismissal under Rule 12(b)(6), we accept the allegations of the complaint as true, Advanced Health-Care Servs., Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir.1990), and will affirm the dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts to support [its] allegations." Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989). We review a dismissal under Rule 12(b)(6) de novo. Id.
 
 
 9
 We first examine the statute under which RF & P instituted these proceedings. Subsection (b)(1) of Sec. 306 provides that a state may not:
 
 
 10
 assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
 
 
 11
 49 U.S.C. Sec. 11503(b)(1). The Act gives federal courts the power to prevent a violation of Sec. 306(b) and provides an explicit exception to the Tax Injunction Act, 28 U.S.C. Sec. 1341 (1988). 49 U.S.C. Sec. 11503(c).[8] No court may, however, grant relief under Sec. 306 unless the ratio of assessed value to true market value of railroad property is at least five percent more than the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. 49 U.S.C. Sec. 11503(c).
 
 
 12
 Thus, to state a facially valid claim under Sec. 306, a plaintiff must allege (1) the assessed value of its transportation property, (2) the true market value of its property, and (3) the ratio of assessed value to market value for all other commercial and industrial property in the same assessment jurisdiction. The plaintiff must further allege that the ratio of (1) to (2) exceeds (3) by more than five percent.
 
 
 13
 RF & P properly alleges each of these factors. RF & P sets forth the assessed values of its properties in each of the taxing jurisdictions for the years in question. (Complaint pp 12-17.) RF & P also alleges that the Department's own assessment studies demonstrated "that non-railroad commercial and industrial property in Virginia for tax years 1988 through 1991 was assessed at no more than 100% of true market value." (Id. p 26.)[9]
 
 
 14
 RF & P does not suggest any numerical figures as the "true market values" of its properties. Rather, it alleges that the Department "used a methodology known as the across-the-fence method," that the ATF method requires adjustments for differences in size, shape, topography, accessibility, and additional physical features, that the Department misapplied the ATF method by failing to make such adjustments, and that as a result, the Department's assessments substantially exceed 100% of true market value. (Complaint p 13, J.A. at 11.) Based on these allegations, RF & P concludes that "the ratios of assessed value to true market value for the operating land portion of RF & P's rail transportation property for tax years 1988 through 1991 are more than 5% greater than the ratios of assessed value to true market value for all other commercial and industrial property in Virginia." (Id. p 29, J.A. at 15.) These allegations sufficiently state a claim under the text of Sec. 306.[10]
 
 
 15
 The district court nevertheless dismissed the complaint, and offered three reasons to justify its decision: (1) the complaint was essentially an attempt to challenge the ATF method of valuation and to return to the unit method; (2) the complaint does not allege a specific intent to discriminate against the railroad; and (3) the complaint is based solely on a difference of opinion between appraisers, and a mere difference of opinion is an insufficient basis on which to state a claim. We hold that none of these reasons justifies dismissal of RF & P's complaint.
 
 A. Challenge to Methodology
 
 16
 In Chesapeake Western, we held that # 7F8E # 306 does not provide a basis for railroads to challenge a state's preferred methodology for ascertaining the true market value of railroad property." Chesapeake Western, 938 F.2d at 533. Consequently, if a complaint brought under Sec. 306 contests no more than methodology, it fails to state a claim and should be dismissed. The district court held that RF & P's complaint was "essentially an attempt by the railroad to challenge the method of taxation so that a more favorable assessment method would be used." RF & P IV, 797 F.Supp. at 496. We disagree.
 
 
 17
 In very clear terms, the complaint limited its challenge to the application of the ATF methodology. RF & P first acknowledged that Virginia now employs the ATF methodology, (Complaint p 13, J.A. at 11), and then stated the narrow contention that it raises in this case: "The Department misapplied the across-the-fence methodology in its revised assessments of RF & P's operating land for 1988 and 1989 by failing to make the adjustments required by across-the-fence valuation methodology to account for differences in size, shape, topography, accessibility and additional physical features," (id. p 14, J.A. at 11). RF & P alleged similar failures with respect to tax years 1990 and 1991. (Id. p 16, J.A. at 12.) Adjustments for these differences are appropriate under the ATF method. See RF & P II, 247 S.E.2d at 410 (preliminary across-the-fence value adjusted for peculiar parcel size, shape, topography, lack of public sewer and water service, and limited access to public streets); RF & P I, 124 S.E.2d at 208 (size and topography). We think the Complaint appropriately challenges the Department's application of the ATF methodology, and not the methodology itself.[11] As one district court recently noted, "the Commonwealth cannot shield itself from any and all challenges to its taxation of railroad property by a blanket statement that such challenges constitute attacks on Virginia's taxation methodology." CSX Transportation, Inc. v. Forst, 777 F.Supp. 435, 443 (E.D.Va.1991) (order granting preliminary injunction). Consequently, RF & P's complaint does not run afoul of Chesapeake Western.
 
 B. Discriminatory Intent
 
 18
 As an alternative ground on which to dismiss the complaint, the district court held that, "[i]n order to state a proper challenge to a tax assessment method under section 306, a plaintiff must allege specific conduct by the defendant indicating a discriminatory intent to discriminate against the railroad." 797 F.Supp. at 496. RF & P challenges this holding, and the Defendants concede that it is an incorrect statement of the law.
 
 
 19
 We agree. The Supreme Court has held that a plaintiff need not show discriminatory intent to prevail on a Sec. 306 claim. Burlington N.R.R. v. Oklahoma Tax Comm'n, 481 U.S. 454, 463-64, 107 S.Ct. 1855, 1861, 95 L.Ed.2d 404 (1987). To the extent dismissal was predicated on the lack of discriminatory intent, dismissal was improper.
 
 C. Disagreement between Appraisers
 
 20
 Believing that a claim under Sec. 306 could be made out only upon an allegation of discriminatory intent, the district court understandably concluded that allegations of a mere difference of opinion between appraisers could not suffice to state a proper claim. Moreover, the district court feared that, if a claim could be based on nothing more than the opinion of an appraiser, the courts would soon be performing the same functions as state tax assessment boards, a result that the district court believed Congress could not have intended. RF & P IV, 797 F.Supp. at 496.
 
 
 21
 The Supreme Court has definitively resolved this question. In Burlington Northern, the Burlington Northern Railroad challenged the Oklahoma Tax Commission's computation of the true market value of its railroad system, based on the Commission's refusal to make certain deductions required by the Commission's own methodology. Burlington Northern, 481 U.S. at 460, 463 n. 5, 107 S.Ct. at 1859, 1861 n. 5.[12] The Commission argued that the railroad could not challenge the state's calculation of market value, 481 U.S. at 461-62, 107 S.Ct. at 1860, but the Supreme Court rejected that interpretation as inconsistent with the language of the statute. 481 U.S. at 462-63, 107 S.Ct. at 1860-61. We have previously read Burlington Northern to hold that "Sec. 306 unambiguously provides a basis for railroads to challenge a state's calculation of the true market value of railroad property under whatever accounting system prevails" in that state. Chesapeake Western, 938 F.2d at 531; cf. RF & P I, 124 S.E.2d at 211 (after evaluating various appraisals, the court concluded that the Commission's assessment came within the range of honest differences of opinion, implying that an assessment falling outside that range would be actionable).
 
 
 22
 Permitting railroads to present the testimony of appraisers other than those employed by the state accords with the remedial scheme designed by Congress. In defining the circumstances in which a railroad deserves relief from discriminatory state taxation, Congress devised a strict formula having four variables: the assessed value of railroad property, the assessed value of other commercial and industrial property, the true market value of commercial and industrial property, and the true market value of railroad property. Most litigation under Sec. 306 will center upon this last variable. The first two variables, the assessed values of real property, will generally be matters of public record. The third variable, the true market value of other commercial and industrial property, is more readily ascertainable through analysis of market transactions.[13] The final variable, the true market value of the railroad's property, is left as essentially the only variable subject to genuine dispute.[14] It would be incongruous to accord railroads access to the full range of the court's equitable powers and then to deprive them of the principal means to benefit from that access. If denied the ability to present evidence on the true market value of its property, a railroad's rights under Sec. 306 would be, as RF & P aptly summarized, "limited to checking the state's arithmetic." (RF & P's Opening Br. at 33.) Although a plaintiff railroad must accept a state's chosen methodology, Sec. 306 does not require that it accede to the state's application of that methodology. Rather, a railroad may present independent evidence of the fair market value of its property, provided, of course, that it limits its evidence to factors that may properly be taken into account under the state's chosen methodology.
 
 III. Affirmative Defenses
 
 23
 As further grounds for dismissing RF & P's complaint, the Defendants strenuously argued that RF & P's claims were barred by the doctrines of collateral estoppel and res judicata. In its opinion, the district court mentioned these defenses but did not discuss them. RF & P IV, 797 F.Supp. at 495. The Defendants renew their arguments before this Court as alternative grounds on which to affirm the dismissal of the complaint.
 
 
 24
 Defendants face a procedural stumbling block to asserting these affirmative defenses. A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses. In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint. McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 1357, at 348-49 (2d ed. 1990) ("The complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading." (footnotes omitted)). Because neither of the asserted defenses appears on the face of the complaint, it is inappropriate to address them in the current posture of the case. These defenses are more properly reserved for consideration on a motion for summary judgment.
 
 IV. Abstention
 
 25
 As an alternative basis for dismissing the complaint, the district court ruled that abstention was appropriate because "the same issues have been litigated over the last three years and are currently being litigated in state court." RF & P IV, 797 F.Supp. at 496. We review the district court's decision to abstain for abuse of discretion. New Beckley Mining Corp. v. International Union, United Mine Workers of Am., 946 F.2d 1072, 1074 (4th Cir.1991) (abstention under Colorado River ), cert. denied, --- U.S. ----, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992); Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir.1988) (abstention under Burford ); Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n, 791 F.2d 1111, 1115 (3d Cir.1986) (abstention under Younger ).
 
 
 26
 We begin with the fundamental proposition that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244. The obligation to hear cases properly before the district court is "virtually unflagging." Id. at 817, 96 S.Ct. at 1246. Abstention may be justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244. On appeal, Defendants urge that abstention was appropriate under Younger, Burford, and Colorado River. We will review each doctrine in turn.
 
 A. Younger
 
 27
 To support its decision to abstain, the district court relied solely upon the doctrine of Younger v. Harris.[15] The Younger doctrine expresses "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The doctrine recognizes that state courts are fully competent to decide issues of federal law, Lynch v. Snepp, 472 F.2d 769, 774 (4th Cir.1973), cert. denied, 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974), and has as a corollary the idea that all state and federal claims should be presented to the state courts. Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).[16]
 
 
 28
 The district court set forth the appropriate three-part test for applying Younger abstention:
 
 
 29
 (1) is there an ongoing state judicial proceeding; (2) do the proceedings implicate important state interests; [and] (3) is there an adequate opportunity in the state proceedings to raise federal claims.
 
 
 30
 RF & P IV, 797 F.Supp. at 497 (citing Middlesex County, 457 U.S. at 433, 102 S.Ct. at 2522); see also Kenneally v. Lungren, 967 F.2d 329, 331 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). The district court concluded that each element of the Younger test had been satisfied. RF & P IV, 797 F.Supp. at 497.
 
 
 31
 Assuming arguendo that the test for Younger abstention has been satisfied, we nevertheless conclude that the district court should not have abstained. Abstention is not necessarily appropriate in every civil action that meets the formal requirements of the Younger doctrine. See New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 368, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989), cert. dismissed, --- U.S. ----, 112 S.Ct. 411, 116 L.Ed.2d 357 (1991); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 n. 12, 107 S.Ct. 1519, 1527 n. 12, 95 L.Ed.2d 1 (1987) ("Our opinion does not hold that Younger abstention is always appropriate whenever a civil proceeding is pending in a state court."); Moore v. Sims, 442 U.S. 415, 423 n. 8, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979). In "extraordinary circumstances," the federal courts may disregard the "strong federal policy against federal-court interference with pending state judicial proceedings." Middlesex County, 457 U.S. at 431, 102 S.Ct. at 2521. Because Congress created in Sec. 306 a clear exception to the principles of comity that underlie Younger abstention, we believe this case presents just such extraordinary circumstances.
 
 
 32
 When acting under Sec. 306, district courts are not bound by the provisions of the Tax Injunction Act, 28 U.S.C. Sec. 1341 (1988). 49 U.S.C. Sec. 11503(c). The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," 28 U.S.C. Sec. 1341, and essentially codifies the fundamental principles of comity which underlie our federal system, see Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 110, 102 S.Ct. 177, 183, 70 L.Ed.2d 271 (1981). Congress recognized the vital importance of permitting states to administer their tax systems unhindered by interference from the federal courts. See Southern Ry., 715 F.2d at 527. The Act " 'was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.' " Fair Assessment, 454 U.S. at 110, 102 S.Ct. at 183 (quoting Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981) (citing 81 Cong.Rec. 1415 (1937))).
 
 
 33
 Despite this profound respect for the integrity of state sovereignty in taxation matters, Congress passed Sec. 306 as an explicit exception to the Tax Injunction Act. The history of state discrimination against railroads--including the railroads' experience in the state courts--convinced Congress to restore the power of the federal courts to enjoin discriminatory state taxation of railroads.
 
 
 34
 The effect of [Sec. 1341] has been to close the doors of the Federal courts to carriers affected by discriminatory taxation. It has not, however, insured that the State courts provide carriers with a plain, speedy, and efficient remedy.
 
 
 35
 The testimony before the committee indicated that present State procedures to challenge discriminatory State tax assessments are often difficult, time consuming, and not productive of material relief [and that] the State courts are very reluctant to overturn the action of the assessing body, and they exert every effort to sustain the tax administrators.
 
 
 36
 S.Rep. No. 630, 91st Cong., 1st Sess. 6-7 (1969); see also Southern Ry., 715 F.2d at 528. Although principles of comity teach us to respect the abilities of state courts to provide adequate remedies for federal rights, see Lynch, 472 F.2d at 774; but cf. Gibson v. Berryhill, 411 U.S. at 577, 93 S.Ct. at 1697 (Younger abstention inappropriate where state tribunal is biased), Congress was clearly concerned that the states were not providing an "adequate" opportunity for railroads to remedy discriminatory taxation. Based on the evidence before it, Congress concluded that a federal forum should be available to railroads seeking to escape the assessment and collection of discriminatory taxes. This grant of authority, when viewed in light of the legislative history, manifests an intent for the federal courts to prevent discrimination against railroads.
 
 
 37
 In the narrow context of state taxation of railroad property, Congress has determined that the principles of comity that underlie the Tax Injunction Act--the principles that also underlie Younger abstention--simply do not apply. Section 306 defines an entire category of cases in which "extraordinary circumstances" exist to justify federal court intervention in state taxation matters. Consequently, the district court abused its discretion by abstaining under Younger.[17]
 
 B. Burford
 
 38
 Defendants urge in the alternative that abstention was proper under Burford.[18] The Defendants argue that the only real factual issue in a Sec. 306 claim is a determination of the "true market value" of RF & P's property, a question of state law that under Burford is best resolved in state proceedings.
 
 The Burford doctrine provides that
 
 39
 [w]here timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
 
 
 40
 New Orleans Pub. Serv., 491 U.S. at 361, 109 S.Ct. at 2514 (quoting Colorado River, 424 U.S. at 814, 96 S.Ct. at 1244). The Burford doctrine is grounded in respect for the sovereignty of the states and the desire to avoid unnecessary federal interference with complex issues of state law. Burford, 319 U.S. at 332-34, 63 S.Ct. at 1106-07.
 
 
 41
 Burford does not apply here. The abstention argument which the Defendants advance has been carefully refuted by the Eleventh Circuit. In Southern Railway v. State Board of Equalization, 715 F.2d 522 (11th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), the court undertook an exhaustive analysis of the legislative history of the 4-R Act and concluded:
 
 
 42
 Congress thoroughly considered the effects the Act would have on state taxation policies and practices. After weighing these effects, Congress concluded that both a federal remedy and a federal forum were necessary to further the strong national policy of protecting interstate commerce from the disruptive effects of discriminatory state and local taxation of railroad property....
 
 
 43
 The legislative history of section demonstrates that Congress intended to carve out an exception not only to the Tax Injunction Act, but also to the underlying doctrine of equitable restraint in the narrow area of discriminatory taxation of railroads. Congress meant to guarantee a federal forum for railroad suits, and only an exemption from abstention in all its forms would accomplish this purpose.
 
 
 44
 Id. at 529; accord Burlington N.R.R. v. James, 911 F.2d 1297, 1300 (8th Cir.1990). Moreover, the "mere presence of a complicated state or local regulation does not mandate abstention." TransDulles Ctr., Inc. v. USX Corp., 976 F.2d 219, 224 (4th Cir.1992). We agree with this analysis. Because Congress has expressly determined that the railroads deserve the opportunity to litigate claims of state tax discrimination in federal court, Burford abstention is inappropriate under Sec. 306.
 
 C. Colorado River
 
 45
 Finally, the Defendants argue that we can affirm the dismissal of RF & P's claims under the "wise judicial administration" doctrine enunciated in Colorado River.[19] The Colorado River doctrine seeks to conserve judicial resources and otherwise avoid duplicative litigation when litigants seek to adjudicate the same dispute in both state and federal forums. Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246. However, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Colorado River, 424 U.S. at 818, 96 S.Ct. at 1246.[20] A court's task is to ascertain whether, in light of the heavy presumption in favor of retaining jurisdiction, exceptional circumstances justify its surrender. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983).
 
 
 46
 In assessing whether to abstain under Colorado River, "the district court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Mining, 946 F.2d at 1073.
 
 
 47
 There has been no allegation that there are any ongoing state judicial proceedings involving the 1990 and 1991 tax years. Consequently, at least with respect to those two years, abstention under Colorado River is inappropriate. Moreover, as to the 1988 and 1989 tax years, we must consider the relative progress of the state and federal proceedings. See Gordon v. Luksch, 887 F.2d 496, 498 (4th Cir.1989). The district court reached a final disposition on the merits (albeit in the form of a dismissal of the complaint), while the state court has taken no action whatsoever. Indeed, the only action that has taken place in state court is the filing of applications for erroneous assessments and responses to those applications. Because relatively little progress has been made in state court and because the district court will shortly adjudicate the parties' dispute as to the 1990 and 1991 tax years, it would be unwise to remand the remaining two years to state court. Each of the four tax years involves substantially the same issues, and remanding a portion of this case to state court would itself create duplicative litigation and a waste of judicial resources. Consequently, considerations of wise judicial administration do not counsel abstention in this case, and Colorado River does not offer an alternative ground on which to affirm the district court.[21] Because abstention is inappropriate under Younger, Burford, and Colorado River, the district court abused its discretion by abstaining in this case.
 
 V. Preliminary Injunction
 
 48
 RF & P also appeals the denial of its motion for a preliminary injunction against the assessment and collection of the taxes disputed in this case,[22] and urges us to direct the entry of a preliminary injunction against the Defendants. It is clear from the district court's opinion that it did not address the merits of the motion but rather denied it because the complaint had been dismissed. Because we have determined that dismissal was inappropriate, we think the district court should reconsider RF & P's motion for a preliminary injunction. We therefore vacate the district court's denial of RF & P's motion for a preliminary injunction and remand for reconsideration.
 
 VI. Conclusion
 
 49
 In sum, we reverse the dismissal of RF & P's complaint, vacate the denial of RF & P's motion for a preliminary injunction, and remand for further proceedings. Although our decision may impose upon the district court an obligation that arguably is best carried out by the Commonwealth's Department of Taxation, Congress has demanded otherwise. After a careful study of the history of state taxing practices, Congress determined that railroads were entitled to adjudicate their disputes with state taxing authorities in federal court. Until Congress alters that view, the federal courts must grant access to railroad companies seeking relief from the discriminatory application of state taxation methodologies.
 
 
 50
 REVERSED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 [1]
 The Defendants are Arlington County; Fairfax County; Prince William County; the city of Alexandria, Virginia; William H. Forst, the Tax Commissioner of Virginia; and David E. Jordan, the Acting Director of the Property Tax Division of the Virginia Department of Taxation
 
 
 [2]
 Congress made minor alterations in the language of Sec. 306 when it recodified that section at 49 U.S.C. Sec. 11503. The changes were not substantive. Burlington N.R.R. v. Oklahoma Tax Comm'n, 481 U.S. 454, 457 n. 1, 107 S.Ct. 1855, 1858, 95 L.Ed.2d 404 (1987). Because it has become customary to refer to the original section, we will follow that practice
 
 
 [3]
 Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [4]
 For explanation of these two methods, see Chesapeake Western, 938 F.2d at 529
 
 
 [5]
 Under Virginia law, the Tax Commissioner must reassess the real property of each railroad annually. Va.Code Ann. Sec. 58.1-2655(A) (Michie Supp.1992)
 RF & P claims to have paid in full the 1988 and 1989 taxes calculated under the unit method. (Complaint p 11.) The 1984 through 1987 tax years are not at issue in this litigation.
 
 
 [6]
 Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)
 
 
 [7]
 Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)
 
 
 [8]
 The 4-R Act originally provided that district courts would have power to "grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section." Pub.L. No. 94-210, Sec. 306(2), 90 Stat. 31, 54-55 (1976). The recodified version omitted this language as unnecessary. See 49 U.S.C. Sec. 11503, Historical and Statutory Notes
 
 
 [9]
 These figures are readily available to the public. The Department of Taxation publishes assessment ratios studies annually for each taxing jurisdiction in the Commonwealth
 
 
 [10]
 Significantly, Defendants admit that at least one parcel of RF & P's property has in fact been overvalued. (J.A. at 158.)
 
 
 [11]
 The district court even acknowledged that the complaint was "couched in terms of challenging the application of the ATF tax method." 797 F.Supp. at 496
 
 
 [12]
 Oklahoma uses a variant of the unit method. Burlington Northern, 481 U.S. at 459, 107 S.Ct. at 1859
 
 
 [13]
 Indeed, Sec. 306 itself contemplates that the ratio of the assessed value of other commercial and industrial property to the true market value of such property will generally be established through "the randomsampling method known as a sales assessment ratio study." 49 U.S.C. Sec. 11503(c)
 
 
 [14]
 A state could also consistently undervalue all other commercial and industrial property in the state. Such undervaluation would give rise to a claim under Sec. 306. Clinchfield R.R. v. Lynch, 784 F.2d 545, 548 (4th Cir.1986); Clinchfield R.R. v. Lynch, 700 F.2d 126, 129-30 (4th Cir.1983). Undervaluation is similarly subject to proof by competent appraisal testimony
 
 
 [15]
 401 U.S. 37 (1971)
 
 
 [16]
 Although it is now well settled that Younger abstention can be applied in civil cases, see Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 627, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986) (Younger applies to civil proceedings involving important state interests), "[a]bstention under Younger v. Harris applies predominantly to cases involving state criminal proceedings," Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 789 n. 10 (4th Cir.1991) (citation omitted). Younger abstention is rare in other cases. Hazardous Waste Treatment Council, 945 F.2d at 789 n. 10; see also In re Application & Affidavit for a Search Warrant, 923 F.2d 324, 328 (4th Cir.) ("The usual case where Younger applies is where a defendant requests a federal injunction against pending state court criminal proceedings."), cert. denied, --- U.S. ----, 111 S.Ct. 2243, 114 L.Ed.2d 484 (1991)
 
 
 [17]
 In Union Pacific Railroad v. Department of Revenue, 920 F.2d 581, 586 n. 10 (9th Cir.1990), the Ninth Circuit declined to abstain despite ongoing judicial proceedings in state courts adjudicating identical issues, id. at 583. Although the court was faced with a narrow challenge to federal jurisdiction premised on Pullman abstention, the court stated broadly:
 We view the Supreme Court's opinion in Burlington Northern as an authoritative signal that the district court had an obligation to exercise the power specially vested in that court by Congress to adjudicate those [Sec. 306] claims properly before it. 920 F.2d at 586.
 
 
 [18]
 Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)
 
 
 [19]
 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)
 
 
 [20]
 Although the Supreme Court made clear that the Colorado River doctrine was technically not a form of abstention, 424 U.S. at 817-18, 96 S.Ct. at 1246, the distinction has been lost, and we see no reason to revive it. See McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir.1992) (describing Colorado River doctrine as abstention); New Beckley Mining, 946 F.2d at 1073 (same)
 
 
 [21]
 We note that the Ninth Circuit has implied that it will categorically reject arguments under Colorado River seeking to bar Sec. 306 claims from federal court. See Union Pacific, 920 F.2d at 586. Because we conclude that the requirements for abstention under Colorado River have not been met, we do not reach the question whether abstention under Colorado River is ever appropriate
 
 
 [22]
 The district court should not, of course, enjoin the collection of any undisputed portion of the taxes assessed by the Defendants. See Atchison, T. & S.F. Ry. v. Lennen, 640 F.2d 255, 261 (10th Cir.1981)